UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Cody Whitehouse,<br><br>    Plaintiff,<br><br>v.<br><br>Keystone Law, LLC,<br><br>and<br><br>Cassandra Blair Thomas, Esq., *Individually*,<br><br>    Defendants. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE OHIO CONSUMER SALES PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Cody Whitehouse ("Cody"), is a natural person who resided in Sylvania, Ohio, at all times relevant to this action.

2. Defendant, Keystone Law, LLC ("Keystone"), is a Pennsylvania limited liability company that maintained its principal place of business in East Norriton, Pennsylvania, at all times relevant to this action.

3. Defendant, Cassandra Blair Thomas, Esq. ("Ms. Thomas"), is the managing attorney of Keystone.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

6. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Cody's claims under the Ohio Consumer Sales Practices Act, R.C. § 1345.02 (A) ("OCSPA") because they share a common nucleus of operative fact with Cody's claims under the FDCPA.

## STATEMENT OF FACTS

7. At all times relevant to this action, Keystone collected consumer debts.

8. Keystone regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

9. The principal source of Keystone's revenue is debt collection.

10. Keystone is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

11. Ms. Thomas began working for Keystone nearly 20 years ago when Keystone was known as The Law Offices of Joel Cardis, LLC ("Joel's Law Firm").

12. At that time, Joel's Law Firm was owned and managed by Joel Cardis ("Joel").

13. Joel initially hired Ms. Thomas as an administrative assistant at Joel's Law Firm.

14. After a couple of years, Ms. Thomas and Joel discussed Ms. Thomas attending law school.

15. Eventually Ms. Thomas and Joel agreed that Ms. Thomas would attend law school.

16. Eventually Ms. Thomas and Joel agreed that Ms. Thomas would purchase Joel's Law Firm from Joel once Joel retired.

17. During Ms. Thomas's tenure with Joel's Law Firm, the firm boasted that it was very successful in collaborating with collection agencies nationwide to extract additional funds from exhausted inventory which would otherwise have gone unrecovered.

18. In addition to being successful in extracting funds from exhausted accounts, nationwide, Joel's Law Firm also successfully caught the attention of consumer protection advocates.

19. Keystone law is not authorized to practice law nationwide.

20. In addition to advertising its success in extracting funds from exhausted accounts, nationwide, Joel's Law Firm received a plethora of online complaints from consumers claiming Joel's law firm treated them unlawfully.

21. Despite this, on information and belief, Ms. Thomas agreed to attend law school while Joel continued to mentor her so that Joel's Law Firm could continue its success of "extracting funds" from exhausted accounts their locally licensed and ethically behaving competitors were unable to liquidate.

22. In 2013, Ms. Thomas became the sole member of Joel's Law Firm and is thoroughly familiar with all levels and aspects of its collections practice, from the day-to-day activities of a collector to the legal and regulatory issues of a lawyer to the operational and administrative concerns of an owner.

23. In 2019, based in part on Joel's Law Firm's poor online reputation, Ms. Thomas decided to change the name of Joel's Law Firm to Keystone Law, LLC.

24. Ms. Thomas is the sole member of Keystone.

25. Ms. Thomas is the only attorney employed by Keystone.

26. Ms. Thomas creates, reviews or approves every collection letter template used by Keystone.

27. Ms. Thomas supervises all of the debt collectors that work for Keystone.

28. Ms. Thomas conducts the training and audits of all of the debt collectors that work for Keystone.

29. Ms. Thomas is instrumental in promulgating all of the policies and procedures of Keystone.

30. Ms. Thomas is a "debt collector" as defined by 15 U.S.C. § 1692a(6). ). *See Kistner v. the Law Offices of Michael* 518 F.3d 433 (6th Cir. 2018). (Attorney can be a "debt collector" and may be held individually liable for any violations of the FDCPA).

31. Keystone and Ms. Thomas both meet the definition of a "supplier" as defined by R.C. § 1345.01 (C). *See Midland Funding L.L.C.. V. Brent, 644 F.Supp2d 961, 976 (N.D. Ohio 2009)(citing cases)*.

32. As described, *infra*, Keystone contacted Cody to collect a debt that was incurred primarily for personal, family, or household purposes.

33. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

34. Cody is a "consumer" as defined by 15 U.S.C. § 1692a(3).

35. Keystone is a law firm organized under the laws of Pennsylvania.

36. Ms. Thomas has never applied to the Supreme Court of Ohio to practice law in Ohio.

37. Ms. Thomas is not authorized to practice law by the Supreme Court of Ohio.

38. On or around April 27, 2021, Ms. Thomas's law firm, Keystone Law, LLC, mailed Cody a legal demand letter (Ohio Demand Letter) within the State of Ohio demanding that Cody pay Keystone money Cody allegedly owed to Keystone's alleged client, TLC Community Credit Union ("TLC Union"). *See* Exhibit A

39. TLC Union is a Lenawee County, Michigan, credit union and only has branches in Michigan.

40. Ms. Thomas is not licensed to practice law in Michigan.

41. Keystone is not authorized to practice law in Michigan.

42. The Ohio Demand Letter was drafted by sent by Ms. Thomas's Legal Assistant ("Legal Assistant 1").

43. Prior to Legal Assistant 1 sending the Ohio Demand Letter, the letter admitted that Ms. Thomas had not personally reviewed the particular circumstances of Cody's alleged account.

44. It is Ms. Thomas's professional responsibility to adequately supervise her legal assistants.

45. The Ohio Demand Letter contains complex legal assertions involving contract, breach, and liability.

46. Because Ms. Thomas had not reviewed the account prior to the Ohio Demand Letter being sent, these legal determinations were made by, a non-lawyer, Legal Assistant 1.

47. The Ohio Demand Letter explains, that at the time Legal Assistant 1 drafted the letter, legal action was not currently pending against Cody.

48. The mere mention of Legal Action in the letter was intended to cause Cody to believe that if he failed to pay the debt, future legal action would be taken against him.

49. As described, *infra*, this was extremely troubling for Cody as he was confident that he didn't owe a debt to Keystone or to TLC Union.

50. Upon receiving the Ohio Demand Letter, Cody believed Keystone was a law firm authorized to practice law in Ohio.

51. The least sophisticated consumer, having received The Ohio Demand Letter would have believed that Keystone was authorized to bring legal action against that person.

52. The Ohio Demand Letter failed to disclaim the extent of Keystone or Ms. Thomas's authority to practice law in Ohio.

53. The Ohio Demand Letter failed to disclose whether or not Keystone, in this instance, was acting as a law firm or simply as a debt collector.

54. Ms. Thomas created or approved the template that Legal Assistant 1 used when drafting the Ohio Demand Letter.

55. Keystone's practice of mailing demand letters into states where it is not authorized to practice law causes the needless confusion, abuse and harassment of consumers like Cody.

56. Being that Cody is a member, in good standing, with TLC Union, upon receiving the Ohio Demand Letter, he immediately called TLC Union to inquire about the alleged debt.

57. During this communication TLC Union confirmed that Cody was a current member, in good standing, and that he had no debt with TLC Union.

58. In response, Cody called Keystone and reached one of Ms. Thomas's Legal Assistants ("Legal Assistant 2").

59. During this communication, Cody explained to Legal Assistant 2 that he didn't owe a debt to TLC and that he wanted to know how to contact the Ohio Attorney who was working on his case.

60. In reply to Cody's questions, Legal Assistant 2 indicated that she didn't know of Keystone's Ohio address and that the attorney working on his file was Ms. Thomas.

61. Legal Assistant 2 refused to answer Cody's questions about Keystone's debt collection authority such as what documentation Keystone had evidencing a debt, whether or not they had a copy of the alleged contract and failed to provide any meaningful information about the alleged debt.

62. In turn, Cody told Legal Assistant 2 that he disputed the debt and requested that Keystone mail him the documentation that TLC Union sent to Keystone evidencing the debt and establishing Keystone's legal authority to represent TLC Union.

63. On information and belief, Keystone failed to notify TLC Union of Cody's dispute because TLC Union has never authorized Keystone to contact their members.

6

64. More specifically, Cody has confirmed, more than once, that TLC Union has never heard of Ms. Thomas or Keystone, that it doesn't use Keystone in any capacity, and that Cody is in good standing with TLC Union and owes TLC Union no money.

65. Defendants' collection efforts caused Cody emotional distress in the form of frustration, annoyance, aggravation and anxiety.

66. Defendants' collection efforts also intruded upon Cody's privacy.

67. Defendants' collection efforts cause Cody to incur attorney fees in defense of this obligation.

68. The activity engaged in by Defendants are the same activities Congress intended to prevent when it enacted the FDCPA.

69. Defendants' collection efforts forced Cody to lose time by having to dispel Keystone's spurious claims and false legal conclusions.

## COUNT ONE

**Violation of the Fair Debt Collection Practices Act**

70. Cody re-alleges and incorporates by reference Paragraphs 7 through 69 above as if fully set forth herein.

71. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

72. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or

conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

73. The likely effect of Defendants' debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Cody.

74. Defendants violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Cody in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

75. Cody re-alleges and incorporates by reference Paragraphs 7 through 69 above as if fully set forth herein.

76. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

77. Defendants' policies and procedures, as described in Paragraphs 42 through 55, *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

78. Defendants' practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

79. Because Defendants' practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

80. Cody re-alleges and incorporates by reference Paragraphs 7 through 69 above as if fully set forth herein.

81. Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

82. Cody re-alleges and incorporates by reference Paragraphs 7 through 69 above as if fully set forth herein.

83. Defendants violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Ohio Consumer Sales Practices Act

84. Cody re-alleges and incorporates by reference Paragraphs 7 through 69 above as if fully set forth herein.

85. Defendants' actions in attempting to collect the alleged debt from Cody as described above constitute a "consumer transaction" as defined in Ohio Rev. Code § 1345.01(A)

86. Defendants' actions and omissions described above constitute unfair, deceptive and unconscionable acts and practices, in violation of Ohio Rev. Code §§1345.01 and 1435.02 and the substantive rules promulgated under the OCSPA.

87. Defendants, as individuals and through its agents and employees, knowingly committed the unfair and unconscionable acts and practices described above.

88. Defendants violated the OCSPA.

## JURY DEMAND

89. Cody demands a trial by jury.

## PRAYER FOR RELIEF

90. Cody prays for the following relief:

    a. Judgment against Keystone for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Ms. Thomas for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    c. Judgment against each and every Defendant under the OCSPA for three times the amount of actual damages, Statutory damages up to $5,000.00 and reasonably attorney's fees, witness fees, court costs, and other costs incurred by Cody.

    d. For such other legal and/or equitable relief as the Court deems appropriate.

                                                         RESPECTFULLY SUBMITTED,

Date: June 4, 2021                    By:   /s/ Jeffrey S. Hyslip
                                                     Jeffrey S. Hyslip, Esq.
                                                     Hyslip Legal, LLC
                                                     1309 Park St., Suite A
                                                     McHenry, IL 60050
                                                     Phone: 614-490-4224
                                                     jeffrey@hysliplegal.com
                                                     Ohio Bar No. 0079315

                                                     *Attorney for Plaintiff*